**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-20114
No. 96-20152
No. 96-20183
Summary Calendar
_____


In the Matter of:
RONALD A. PIPERI,

                              Debtor.


RONALD A. PIPERI,

                              Appellant,

VERSUS

JORGE A. GUTIERREZ, as Receiver for Rio Grande
Savings and Loan Association, in Liquidation,

                              Appellee.


_____


Appeal from the United States District Court
for the Southern District of Texas
(CA-H-91-3296, CA-H-90-3906 & CA-H-91-3661)

_____


September 12, 1996

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

_____

   [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This is a consolidated appeal from three separate judgments of the district court affirming three respective decisions of the bankruptcy court. The debtor, Ronald Piperi, appeals the modification of the mandatory stay to allow a state court fraud action to continue (No. 96-20152), the order granting summary judgment in a discharge action (No. 96-20183), and the denial of his motion to stay the discharge action (No. 96-20114). We affirm in all three proceedings.

I.

This case arises out of the failure of the Rio Grande Savings and Loan Association ("Rio Grande") and Piperi's bankruptcy. In short, Piperi, as controlling director of Champion Savings Association, entered into a number of loan swaps with Rio Grande. Following the transactions, Rio Grande, which was not insured by either the federal government or the State of Texas, was placed into conservatorship and liquidated by the Texas Savings and Loan Commissioner (the "commissioner").

Jorge Gutierrez, the state receiver, filed a state court suit against Piperi, alleging that he had defrauded Rio Grande in connection with the loan transactions. Following extensive discovery, the state court action was scheduled to begin on November 13, 1990.

2

On November 12, Piperi commenced a chapter 11 bankruptcy.[1]  On November 14, Gutierrez filed with the bankruptcy court an emergency motion to modify the stay.  The court provided notice and conducted an evidentiary hearing on November 16.

Piperi did not testify at the hearing but he was represented by counsel.  Gutierrez testified that he was appointed as receiver after the commissioner declared Rio Grande insolvent and that his duties included prosecuting fraud actions in furtherance of the state's duty to regulate financial institutions.

The court granted Gutierrez's motion, finding that good cause existed under 11 U.S.C. § 362(d)(1) (West Supp. 1996) and that Gutierrez, as receiver, was a governmental instrumentality acting to enforce the police or regulatory powers of the state under § 362(b)(4) (1993).  The court modified the stay in an order dated November 28.

Following the modification, Piperi voluntarily withdrew his answer in state court.  Gutierrez presented evidence, and the jury returned a $96 million fraud verdict against Piperi.  The verdict was reduced to $84 million, consisting of $21 million in actual fraud damages and $63 million in exemplary damages.

Gutierrez commenced an adversary proceeding against Piperi in the bankruptcy court under 11 U.S.C. § 523(d) (1993), seeking to except the state court award from any discharge.  Piperi answered,

---

[1] The proceeding was converted to a chapter 7 proceeding on August 26, 1991.

and Gutierrez filed a motion for summary judgment. Piperi did not offer any contravening summary judgment evidence.

On April 26, 1991, Piperi filed a motion to stay or abate the discharge action under 11 U.S.C. § 305 (1993), based on an alleged criminal investigation into his business affairs. Piperi argued that a stay was required under the parallel proceeding doctrine. After an evidentiary hearing, the court entered an order denying the motion.

On November 1, 1991, the court entered summary judgment in favor of Gutierrez, holding that the actual damages of $21 million were not dischargeable. The court based its judgment on the collateral estoppel effect of the state court judgment, finding that the judgment established that Piperi had engaged in fraud.

## II.

Piperi first argues that the bankruptcy court abused its discretion in modifying the automatic stay. With regard to the finding of good cause under § 362(d)(1), Piperi asserts that there was no evidence of "imminent harm." With regard to § 362(b)(4), he contends that Gutierrez is not a government instrumentality.

The bankruptcy court did not abuse its discretion in finding that there was good cause for modification of the automatic stay.[2] A finding of good cause does not require a finding of "imminent

_____

[2] As a result, we do not address the district court's holding that modification was proper under § 362(b)(4).

4

harm." Piperi filed for bankruptcy on the eve of trial. Risk of delay and judicial economy are both sufficient to constitute good cause.[3] Piperi's assertion that the court improperly based its decision on the fact that he had retained a criminal defense attorney is without merit.

We also reject Piperi's contention that holding the hearing four days after he filed for bankruptcy and two days after Gutierrez filed his motion to lift the stay denied him due process of law. By definition, an emergency hearing cannot be scheduled in a leisurely manner. We agree with the Seventh Circuit that limited notice before a hearing does not violate due process when a state court trial is impending. *Holtkamp*, 669 F.2d at 508.

### III.

Piperi next avers that the bankruptcy court erred in granting summary judgment on the ground that the state court action conclusively determined that the $21 million judgment was for fraud. Piperi argues that the state court judgment was a default judgment and, as such, cannot support collateral estoppel.

For purposes of § 523(a), a bankruptcy court may grant summary

---

[3] *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir. 1982) (finding that judicial economy provides good cause to modify stay when trial was five days away); *In re Saunders*, 103 B.R. 298, 299 (Bankr. N.D. Fla. 1989) (finding that judicial economy supports good cause modification); *In re Elliott*, 66 B.R. 466, 467 (Bankr. S.D. Fla. 1986) (finding that good cause exists to allow conclusion of pending state court proceeding); *In re McGuirt*, 61 B.R. 974 (Bankr. S.D. Tex. 1986) (finding good cause when state court litigation is on the verge of trial).

5

judgment based on the collateral estoppel effect of a state court judgement. *Garner v. Lehrer (In re Garner)*, 56 F.3d 677 (5th Cir. 1995). The preclusive effect of a judgment is determined by the preclusion law of the state in which it was rendered. *Id*. at 679.

Under Texas law, collateral estoppel "bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action." *Id*. Texas law requires that the following:

> A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

*Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1994). In the present case, Piperi questions only the first element of the test.

Because we find that the state court judgment was not a true "default judgment," we reject Piperi's argument that the judgment is not entitled to collateral estoppel effect.[4] In state court, Gutierrez waived his right to take a default judgment and, instead, proceeded with a trial on the merits.[5] In that context, the

---

[4] Whether a true default judgment is entitled to collateral estoppel effect in a bankruptcy proceeding is an open question in this circuit, and we do not address it.

[5] *See* 47 TEX. JUR. 3D *Judgments* § 129 (1980) (noting that a party may waive
(continued...)

6

judgment was not technically a default judgment.[6]

This case presents a situation more akin to a post-answer default, where a party answers and fails to appear at trial and the plaintiff is forced to present his evidence before the jury.[7]  A jury heard the evidence presented by Gutierrez and found that he had met his burden of proof.  Like the defendant in *Garner*, Piperi could have defended the case but, instead, chose to withdraw.  The issue of fraud was fully and fairly litigated.


IV.

We find it unnecessary to reach the merits of Piperi's appeal in No. 96-20114.  The district court dismissed the appeal as moot because Piperi already had been convicted in the parallel criminal proceeding.  Piperi has failed to articulate a single reason why this case is not moot.

The purpose of the stay was to prevent the risk of self-incrimination.  Piperi has not pointed to any instance where he was prejudiced in the bankruptcy proceeding by the risk of self-

---

[5](...continued)
the right to a default judgment).

[6] *See Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979); 47 TEX. JUR. 3D *Judgments* § 114 (1980) (noting that a default judgment is allowed only when a party fails to file an answer and is deemed to have admitted the plaintiff's allegations).

[7] *See Garner*, 56 F.3d at 680 (finding that collateral estoppel applies to a post-answer default because the plaintiff must offer evidence to prove his case); *Stoner*, 578 S.W.2d at 682 (distinguishing between "default judgment" and "post-answer default"); 47 TEX. JUR.3D *Judgments* § 119 (1980) (noting that post-answer default is not a default judgment because the plaintiff must prove its case).

7

incrimination or where continuation of the proceeding will result in prejudice to his criminal case.  The appeal is moot.

The judgments in all three proceedings are AFFIRMED.